UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

COLUMBIA GAS TRANSMISSION,
LLC,

                              Plaintiff,

        v.                                          Action No. 3:14-CV-138

BRIAN A VLAHOS,

                              Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Summary Judgment ("Motion") filed by Plaintiff Columbia Gas Transmission, LLC ("Columbia").  ECF No. 22.  Defendant Brian A. Vlahos ("Vlahos") opposes the Motion.  ECF No. 24.  For the following reasons, the Court GRANTS Columbia's Motion.  ECF No. 22.

### I.    Factual and Procedural Background

The facts of this case are straightforward, especially since the parties filed detailed stipulations of fact.  *See* ECF No. 20.  In sum, Columbia brings this action, seeking declaratory and injunctive relief, against Vlahos relating to a fence he built on a right-of-way easement for an underground natural gas pipeline.

Columbia is a limited liability company, the sole member of which is Columbia Energy Group, Inc. ("CEG").  ECF No. 23 at 2, 1.  Vlahos, an individual, purchased, currently owns, and presently resides on real property located at 606 Wishart Circle, Richmond, Virginia 23229 ("property").  *Id.* at 3, 3-4.  Vlahos purchased this property by a warranty deed, which was recorded May 29, 2009 in the land records of Henrico County, Virginia.  Id. at 3, 5-7.  Pursuant to this deed, the property was purchased "subject to conditions, restrictions, reservations and easements of record," including two right-of-way ("ROW") agreements.  *Id.* at 3, 8-9; see ECF No. 20 at 2-5.

The first right-of-way agreement, dated July 6, 1950 ("1950 ROW"), granted an easement on the property to Commonwealth Natural Gas Corporation ("Commonwealth Natural") from G.T.

Carter and Gertrude Carter. *Id.* at 4, 14. The 1950 ROW stated

> [that Commonwealth Natural] its successors, and assigns, [shall have] the right to lay, maintain, operate and remove a pipe line, or pipe lines, for the transportation of gas, oil, petroleum products, or any other liquids, gases or substances which can be transported through a pipe line.

*Id.* at 4, 17. Furthermore, it provided Commonwealth Natural with "the right of ingress and egress to, from and through" the property subject to the easement and "the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price above mentioned for each additional line." *Id.* It further provided "that the gas line to be laid . . . shall be constructed and maintained below cultivation, so that Grantors may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said line or lines." *Id.* at 6, 30. On August 5, 1950, the 1950 ROW was recorded among the land records of Henrico County. *Id.* at 4, 16. The second right-of-way agreement, dated December 11, 1951 ("1951 ROW"), granted a fifty-foot wide easement, which crosses what is now Vlahos' property. The 1951 ROW reaffirms the 1950 ROW in terms of language and adds that "Grantee further agrees said R/W is to be 50'ft . . . ." *Id.* at 5, 21. The 1951 ROW was recorded on January 7, 1952 in the land records of Henrico County, Virginia. *Id.* at 5, 22. Collectively, the 1950 and 1951 ROWs create a fifty-foot wide easement on the property and dub Columbia and Vlahos as successors-in-interest to the grantees and grantors, respectively, of the 1950 and 1951 ROWs. Id. at 5-6, 24-29. Since purchasing the property, Vlahos has constructed and maintained a fence. ECF No. 24 at 2 1-2; see ECF No. 20 at 5, 41 ("A fence ('Fence') on the Property is located within the Easement area (the 'Fenced Area'), however, the Fence is not located on top of the Pipeline."). Thus, the fifty-foot wide easement is divided by the fence on the property. Running across the property is a high-pressure natural gas transmission pipeline-the Line VM 112 ("pipeline")- which is maintained and operated by Columbia. Id. at 6, 34• Installed in 1951, the pipeline was constructed below cultivation on the property and within the easement. *Id.* at 6-7, 37-38.

On March 5, 2014, Columbia filed suit against Vlahos in this Court, claiming that the above-ground fence is an encroachment. Columbia contends that this fence impairs its ability to maintain

and operate its pipeline in a safe and effective manner, thereby posing a risk to person, property, and the uninterrupted delivery of natural gas to the Richmond area of Virginia.  Despite Columbia's demand, Vlahos refused to remove the fence.  This suit followed, in which Columbia requests that this Court find that the fence breaches the 1950 and 1951 ROWs and order its removal.

On January 12, 2015, Columbia filed the instant Motion.  ECF No. 22.  On February 2, 2015, Vlahos filed his response.  ECF No. 24. Columbia subsequently filed its reply on February 5, 2015. ECF No. 25.

## II.    Legal Standard

### A.  *Summary Judgment*

The Fourth Circuit has held that "[W]e are always obliged to construe liberally the contentions being pursued by pro se parties."  *Sinclair v. Mobile 360, Inc.*, 417 F. App'x 235, 243 (4th Cir. 2011) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)).  In short, therefore, "we impose on pro se litigants-even those who may be cantankerous or make extraneous and inappropriate assertions against their opponents or the court-'less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); see also id. at 322-24 (noting that once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).  However, if the court finds that there is a genuine issue of material fact, the motion must be denied.  A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure§ 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing-that is, pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotations omitted). Hence, "[w]hen the nonmoving party fails to make a sufficient showing establishing an essential element of [her] case and [she] bears the burden of proof on that issue, there is no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 438 (E.D. Va. 2005) (quoting *Celotex*, 477 U.S. at 322) (internal quotations omitted). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol u. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis u. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 at 249-50.

### III.   Discussion

#### A. *Parties' Arguments*

##### a. Columbia

Columbia contends that the Court has subject matter jurisdiction over the case *sub judice* under 28 U.S.C. § 1332 because there is complete diversity between the parties and the controversy exceeds $75,000. With regard to the latter requirement, Columbia argues that, in determining whether the amount in controversy is met, the value in obtaining the injunction must be valued by

the potential catastrophic harm of denying relief.  Here, Columbia argues that failure to safely maintain and operate the pipeline could have catastrophic consequences, including potentially substantial damage to persons and property in or near the easement. Columbia likens his argument to that asserted by the plaintiff in *Texas Eastern Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 759 (M.D. Pa. 1993).  To meet the amount-in-controversy requirement, the plaintiff asserted that failing to grant the relief requested could result in a catastrophe-both to the environment and human life. The Court held as follows:

> The court concludes that Plaintiff has demonstrated by a preponderance of the evidence that the value of the right-of-way, the public interest in safety, and the costs which Plaintiff would incur if the pipelines were closed in combination, exceed the jurisdictional amount .
> . . .

*Id.* at 759.  Therefore, Columbia urges this Court to follow the approach taken by the court in Giannaris.  Additionally, Columbia argues that the $75,000 threshold also is met because daily revenues from the Pipelines exceed $13,500.   Says Columbia, "interference with the pipeline that may result in a failure of the pipeline threatens to result in lost revenues in addition to damage to persons and property." ECF No. 23 at 11.

In addition, Columbia contends that there is an actual controversy between the parties concerning whether Vlahos is permitted to retain the fence in the easement. Columbia seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Vlahos' continued refusal to remove the fence from the property is a breach of the 1950 and 1951 ROWs. Accordingly, under 28 U.S.C. § 2201, Columbia argues that, because there is an actual controversy within the jurisdiction of this Court, the Court "may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

Next, Columbia argues that the uncontradicted opinion of its pipeline expert that a width of fifty feet free of encroachments is necessary for the purposes for which the easement was granted entitles Columbia to summary judgment on its claim for declaratory  and injunctive relief. Columbia contends that the uncontradicted facts prove that the fence interferes with the rights granted to Columbia to safely operate and maintain the pipeline in the easement. Columbia

underscores that there is no question that the ROWs created a fifty foot wide easement, which crosses what is now Vlahos' Property.   Columbia argues that it is entitled to exercise the rights also given to it in the ROWS free of interference by Vlahos such as:  (1) "the right to lay, maintain, operate and remove a pipe line, or pipe lines, for the transportation of gas, oil, petroleum products, or any other liquids, gases or substances  which can be transported through a pipe line;" (2) "the right of ingress and egress to, from and  through" the property subject  to  the  Easement; and (3) "the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided, upon the payment of the price above mentioned for each additional line." ECF No. 23 at 14.  As supported by the declaration of its pipeline expert, Columbia argues that the continuing  presence of the fence in the easement interferes with Columbia's reasonable and proper enjoyment of the easement.   Specifically, Columbia insists that it interferes with it ability to safely operate and maintain the pipeline. In the event that Columbia must visually inspect or repair the pipeline, Columbia asserts that it will need the entire easement cleared of encroachments to have sufficient space for the required trench, spoil pile, and equipment.  Should the fence remain on the property when an emergency repair is required, Columbia asserts that the repair will be delayed by the time needed to plan for the removal of the fence, to deliver equipment needed to remove the fence, and to actually remove the fence. Columbia underscores that the importance of preventing unreasonable interference with the easement is heightened because the pipeline is a high-pressure natural gas pipeline.   Says Columbia, the potential dangers from a failure of the pipeline are demonstrated by the fact that Vlahos' residence and portions of neighboring properties are located within the 174-foot potential impact radius of the pipeline. Therefore, Columbia argues that the harm from the interfering use is irreparable and cannot be adequately addressed in damages. Accordingly, for these reasons, Columbia believes that it is entitled to a permanent injunction requiring the removal of the encroachments in addition to declaratory relief.

      b.  Vlahos

In general, Vlahos attempts to dispute the opinions asserted by Columbia's pipeline expert

regarding the operation, maintenance, repair, and proper trenching for high pressure natural gas pipelines.  Vlahos opines that the fence does not interfere with Columbia's rights to operate  and maintain  the pipeline and he, specifically, attempts  to rebut Columbia's pipeline expert's opinion on proper methods of trenching, space required for trenching, the significance of delays to repair of the pipeline, and a few other issues.

First, he summarily states that the soil conditions and the excavation requirements of the property are not accurately depicted by Columbia's pipeline expert.  ECF No. 24. at 4.  Second, he argues that Columbia fails to detail the scope of routine maintenance programs and the specific impact of the fence on these procedures; Vlahos asserts that the lack of specific data creates a genuine dispute of material fact.  *Id.*  Next, Vlahos argues that Columbia's expert does not state the specific impact  and delay that  removing the fence would have on excavation schedule.  Id. 2-3.  Vlahos argues that, because he only installed a "chain-link" fence, as opposed to a "brick fence on the property" that "requires specialized demolition equipment," the fence can be safely and swiftly removed "in terms of minutes by unskilled workers with common hand tools."  ECF No. 24. at  4, 3.  Finally, Vlahos asserts that "multiple encroachments including fences" have "existed for years [sic] along and across" the pipeline.  As such, Vlahos believes that his fence is acceptable and asserts that Columbia's failure to  provide "specific details as to why particular  fences in similar  proximity to the [p]ipeline  are acceptable and others are not."  *Id.* 6.

B. *Analysis*

a. Vlahos' Failure to Comply with the *Roseboro* Warning Requirements

Columbia included the  requirements set forth in *Roseboro v. Garrison,* 528  F.2d 3O9 (4th Cir. 1975) in its Motion and accompanying memorandum  of law.  ECF No. 22 at 1; ECF No. 23 at 20.  Thus, Vlahos was put  on notice twice of the requirements  of Rule 56 and Local Rule 7(K) of the Eastern  District of Virginia of the consequences of failing to properly respond to a motion for summary judgment.  Specifically, in relevant  part,  Columbia's  moving  papers provided that "[t]he Court could dismiss the action on the basis of the moving party's papers

if the *pro se* party does not file a response; and [t]he *pro se* party must identify all facts stated by the moving party with which the *pro se* party disagrees and must set forth the *pro se* party's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sown statements (bearing a certificate that it is signed under the penalty of perjury) . . . ."

Columbia supports its summary judgment Motion by submitting exhibits and testimony from an expert, attached as "Exhibits" to its memorandum of law. Vlahos opposes Columbia's Motion by submitting a conclusory five-page memorandum, which, although pointing the Court to various portions of Columbia's argument, does not direct the Court to any evidence in the record or elsewhere to support his assertions. Instead, Vlahos' opposition includes factual contentions that amount to mere allegations and unauthenticated documents.[1] *See Causey v. Balog,* 162 F.3d 795, 802 (4th Cir. 1998) (holding that conclusory statements, without specific evidentiary support, are insufficient to defeat a motion for summary judgment). Columbia, as the moving party, has sustained its summary judgment burden under Rule 56(c) of demonstrating absence of any genuine dispute of material fact, *see Celotex Corp,* 477 U.S. at 323, and Vlahos, as the party opposing summary judgment, has failed to come forward with evidence showing that there is a genuine dispute as to any material fact for trial. *See id.* at 324. Moreover, Vlahos has not complied with Local Rule 7(K)(3). This rule, which essentially mirrors the language contained in the *Roseboro* warnings, provides,

> The pro se party must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of petjury)

E.D. Va. Loc. Civ. R. 7(K)(3). Although he expressed awareness that evidence offered in his

---

[1] Vlahos also identifies himself as an expert, who "holds a Bachelor of Science degree in Electrical Engineering from Virginia Commonwealth University and has extensive professional experience in both traditional and technology-focused construction industries." ECF No. 24 at 6. He also asserts that his "educational and professional achievements have provided him with the necessary skills to effectively discuss, analyze, and question the technical details of Columbia's claims regarding the Pipeline." Id. The Court notes that Vlahos' purported expert opinion are not timely disclosed in a manner required under this Court's Scheduling Order. ECF No. 18.

opposition must be presented in a certain form, Vlahos ignored this rule.  *See* ECF No. 24 at 3 (recognizing that "[t]he non-moving party's opposition, however, must consists of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial") (citing Fed. R. Civ. P. 56(e); *Celotex Corp.,* 477 U.S. at 324).  Vlahos did not provide evidence in the form of an affidavit signed under oath before a notary and did not provide a certification that he signed under penalty of perjury.  He only swore to providing true and complete information.  *See* ECF No. 24 at 5·  Although Vlahos identified facts that he alleges are disputed,  as to many of the factual contentions,  he fails to indicate  personal knowledge or present  other competent  and authenticated  evidence that supports  his view of the facts, thereby failing to comply with the requirements of Federal Rule of Civil Procedure 56(c)(4).   *See* Fed. R. Civ. P. 56(c)(4).  Also, appended  to Vlahos' opposition are numerous  photographs.  However, these photographs are not properly authenticated.  "It is well established that  unsworn, unauthenticated  documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir. 1993). "For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56." *Campbell v. Verizon Va., Inc.,* 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) (quoting *Orsi,* 999 F.2d. at 92).   Because of the aforementioned reasons, the Court is empowered under Rule 56 to deem admitted all of the material facts set forth in Columbia's Motion.  Vlahos was given adequate notice of his obligation to properly respond to Columbia's Motion and the consequences of not doing so.   Because of Vlahos' failure to comply with the requirements set forth in Rule 56, Local Rule 7(K), and  the Roseboro warning contained in Columbia's Motion, this Court will accept the truth of Columbia's factual allegations and determine whether it is entitled to summary judgment.

### b.  Jurisdiction and Venue

The Court[2]  may properly exercise subject-matter jurisdiction on the basis of diversity jurisdiction pursuant  to 28 U.S.C. § 1332(a)(1).  First, there is complete diversity of citizenship between the parties:  Vlahos, an individual, is a citizen of Virginia and Columbia, a limited liability company with its sole member being CEG, is a citizen of Delaware (where CEG is incorporated) and Ohio (where CEG has its principal place of business).  *See* ECF No. 1 at 1, 3; ECF No. 23 at 3, 4; ECF No. 20, at 1, 4.  Second, the amount-in-controversy exceeds $75,ooo.oo.  *See* ECF No. 23 at 11 ("Columbia seeks to avoid 'catastrophic' harm that would easily and obviously exceed $75,000"); *id.* ("The $75,000 threshold also is met because daily revenues from the Pipeline[] exceed[s] $13,500."); *Tex. E. Transmission Corp. v. Giannaris,* 818 F. Supp.  755, 759 (M.D. Pa. 1993) (concluding  that  the  plaintiff "demonstrated  by a preponderance of the evidence that the value of the natural gas pipeline right-of-way, the public interest  in" preventing  the  physical  and environmental  catastrophe  that could result from an improperly maintained  pipeline, and the costs which the plaintiff would "incur if the pipelines were  closed"  exceed  the  jurisdictional amount).  The Court exercises general personal jurisdiction over Vlahos, a citizen of Virginia.  Finally, venue is appropriate in this Court as the property that is subject of this suit is located in Henrico County, Virginia.

### c.  Declaratory Judgment

Columbia requests declaratory relief, pursuant to 28 U.S.C. § 2201, by asking this Court to construe the terms of the 1950 and 1951 ROWs and find that the fence Vlahos maintains on his property breaches these ROWs.  That statute  provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States,  upon  the filing of an appropriate pleading, may declare  the  rights  and other legal relations of any interested   party seeking such declaration, whether  or  not  further  relief  is  or  could  be  sought."   28  U.S.C.  § 2201(a).  "The Court  has

---

[2] The Court "has an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2oo6) (internal citations omitted).

considerable discretion whether to grant declaratory relief, and should only do so in appropriate cases." *Columbia Gas Transmission, LLC u. Ott*, 984 F. Supp. 2d 508, 515 (E.D. Va. 2013) (citing Centennial Life Ins. Co. u. Poston, 88 F.3d 255, 256 (4th Cir. 1996)). One such case is where "a plaintiff has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that a declaration of legal rights will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Energy Recouery, Inc. u. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000) (internal quotations omitted)). Accordingly, Columbia has the burden of establishing by a preponderance of the evidence that an actual controversy exists. *Id.* "An actual controversy exists where the dispute between the parties is 'definite and concrete, touching the legal relations of parties having adverse legal interests,' such that the Court may make an 'immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged.'" *Id.* (quoting *Aetna Life Ins. Co. u. Haworth,* 300 U.S. 227, 241 (1937)). Here, an actual controversy exists as to the legal rights and obligations that Columbia and Vlahos have under the 1950 and 1951 ROWs: Columbia contends that the fence Vlahos maintains on the property breaches these ROWs and must be removed, whereas Vlahos refuses removal primarily on the ground that the fence does not substantially interfere with Columbia's rights under the ROWs by increasing the risk of catastrophic harms to persons, property, and natural gas service for the City of Richmond. Thus, a definite and concrete dispute between Columbia and Vlahos is evidenced and, as such, declaratory relief is appropriate here.

### d. Injunctive Relief

Columbia also requests injunctive relief by asking this Court to order Vlahos to remove the fence subject to these 1950 and 1951 ROWs. *See* ECF No.1 at 1 ¶¶ 35-39; ECF No. 23 at 17-19. *As* the Court confirmed in *Columbia Gas Transmission, LLC v. Ott,* 984 F. Supp. 2d 508, 515 (E.D. Va. 2013), "[i]n Virginia, injunctions are an extraordinary remedy, and the decision whether to grant injunctive relief lies within the sound discretion of the Court, taking into account the nature and circumstances of the case." 984 F. Supp. 2d at 515 (citing *Levisa Coal* Co. *v. Consolidation Coal*

Co., 276 Va. 44, 53 (Va. 2008)).[3]   In order to secure an injunction, the party requesting the injunction has the burden of proving that it will suffer irreparable harm and the lack of an adequate remedy at law.  *See Shenandoah Acres, Inc. v. D.M. Connor, Inc.,* 256 Va. 337, 342 (1998) (citing *Black & White Cars, Inc. v. Gromme Transp., Inc.,* 247 Va. 426, 431-32 (1994)).   Moreover, the party "seeking relief must show that the alleged harm is imminent, and not merely speculative or potential."  *Id.* at 342 (citing *Ridgwell v. Brasco Bay Corp.,* 254 Va. 458, 462-63 (Va. 1997)).

This matter involves a refusal by Vlahos, despite Columbia's demand, to remove the fence that he continues to maintain on the property, thereby imminently threatening   physical and irreparable damage to the pipeline, to the public safety, and to the continuous supply of gas to the City of Richmond if Columbia cannot safely operate,  inspect,  and  repair the pipeline, particularly in the event of an emergency.   Therefore, injunctive relief as to Vlahos' fence is appropriate.

### e.   Summary Judgment

Virginia law governs this matter.  *See Erie R.R. Co. v.  Tompkins,* 304 U.S. 64, 78 (1938).  "Where the easement or right of way has been granted by deed the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source."  *Gordon v. Hoy,* 211 Va. 539, 541 (Va. 1971).   Accordingly, the Virginia Supreme Court has held that when the language of a deed is "clear, unambiguous, and explicit," a court construing it "should look no further than  the four corners  of the instrument  under review."  *Langman v.  Alumni Ass'n of the Univ. of Va.,* 247 Va. 491, 498 (Va. 1994) (citation and internal quotation  marks omitted).   Only when the language of a deed is ambiguous may the court look to parol  evidence  or,  specifically,  "the  language  employed  in  the  light  of  the  circumstances surrounding the parties and the land at the time the deed was executed."  *Hoy,* 211 Va. at 541 (citing

---

[3] The Court applies state law when deciding whether to issue a permanent injunction in cases arising under diversity jurisdiction. *See Patrick Henry Estates Homeowners Ass'n v. Miller*, 462 F. App'x 339 (4th Cir. 2012) (applying West Virginia law); *Safeway Inc. v. CESC Plaza Ltd. P'ship*, 261 F.Supp.2d 439, 467-68 (E.D. Va. 2003) (finding that the use of state law, specifically Virginia law, was proper in determining whether a permanent injunction should issue).

*Cushman Va. Corp. v. Barnes,* 204 Va. 245, 251 (Va. 1963); *Stephen Putney Shoe Co. u. R.F. & P.R. Co.,* 116 Va. 211, 217 (Va. 1914)).

Vlahos essentially presents two arguments.  First, Vlahos contends that more specificity by Columbia is needed regarding the planning, materials, and amount of time needed to remove the fence.  He contends that Columbia's pipeline engineer expert does not describe the impacts felt by Columbia from the presence of the fence in enough detail.  Second, Vlahos contends that other fences exist along the pipeline and other pipelines in the area and because Columbia "has not provided any specific details as to why particular fences in similar proximity to the Pipeline are acceptable and others are not," the fence on Vlahos' property does not interfere  with Columbia's rights under the ROWs.  ECF No. 24 at 4, 6.  Put succinctly, Columbia's main arguments are that Vlahos ignores the part of the ROWs that explicitly subjugate Vlahos' right to Columbia's ability to maintain and operate its pipeline in a safe and effective manner and fails to present any expert opinion with which to rebut the opinions of Columbia's pipeline expert.  No party could fairly claim that Vlahos' right to fully use and enjoy his property is not subjugated to Columbia's ability to maintain and operate its pipeline as plainly expressed in both the 1950 and 1951 ROWs. Both ROWs confirm that "Grantor may fully use and enjoy the premises, *subject* to the rights of the Grantee to maintain and operate said line or lines." ECF 23 at 5, 19 (citing ECF Nos. 3-4) (emphasis added); see ECF No. at 5, 31. Here, via the 1950 and 1951 ROWs, both of which were recorded prior to Vlahos' acquisition of the property, the grant of an easement to Columbia to maintain and operate certain pipelines on Vlahos' property is not ambiguous.

To determine the scope of the ROWs, though, this Court must look to Virginia law for direction.  "[U]nder Virginia law, use of an easement 'includes those uses which are incidental and necessary to the reasonable and proper enjoyment of the easement, but is limited to those that burden  the servient estate as little as possible."' *Bernier v. Columbia Gas Transmission Corp.,* 2005 WL 2621989, at *5 (W.D. Va. Oct. 12, 2005) (quoting *Scott v. Karmy,* 52 Va. Cir. 118, 124 (Va. Cir. Ct. 2000)).  The only evidence the Court has before it to determine the use that is "incidental

13

and necessary to the reasonable and proper enjoyment of Columbia's right to maintain and operate its pipeline is the Declaration of Andrew Kvasnicka ("Kvasnicka"). ECF No. 23, Ex. 3 ("Kvasnicka Decl."). Vlahos offered nothing in response to this evidence.

Kvasnicka, as one of Columbia's engineers, averred that the pipeline, which is among the primary sources for natural gas to the City of Richmond, Virginia, must be safely maintained and operated to sustain a continuous supply of gas to the area. *Id.* ¶ 9. A width of fifty feet, as granted under the 1950 and 1951 ROWs, is necessary to safely access the pipeline for maintenance, visual inspection, replacement, and repair to comply with the regulations of the Occupational Safety and Health Administration and provisions of the Code of Federal Regulations. *Id.* ¶¶ 10-21. According to Kvasnicka, encroachments, like the fence, on the property interfere with these objectives, *id.*15, thereby possibly causing "damage to person or property and or a loss of supply of natural gas," *id.*¶ 19. Additionally, encroachments such as the fence in the case *sub judice* interfere with Columbia's ability to prevent third-party damage, which is a leading cause of pipeline incidents. In particular, Kvasnicka opined that the presence of the fence impedes excavation purposes and access to the pipelines in the event of repair or replacement because Columbia "needs the full width of the easement" to, specifically, dig a trench. *Id.* ¶ 19. These concerns become even more important since the "[p]otential [i]mpact [r]adius for a pipeline is the radius of a circle within which the potential failure of a pipeline could have significant impact on people or property. " *Id.* ¶ 21.

The ROWs provide that "Grantor may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said line or lines." See ECF 23 at 14; ECF Nos. 3-4. Therefore, both ROWs plainly granted Columbia the right to maintain and operate certain pipelines on Vlahos' property; a right that clearly supersedes Vlahos' rights. In ascertaining the incidental and necessary use to which Columbia may reasonably and properly enjoy the easement it was granted, the only evidence the Court has before it upon which to make such a determination is the Kvasnicka Declaration. This Declaration supports Columbia's claim that the fence, which is

situated on Vlahos' property, encroaches upon the easement granted by the 1950 and 1951 ROWs and impedes Columbia's ability to maintain and operate its pipelines. This evidence remains uncontradicted. For example, although he did not, Vlahos could have submitted a dueling declaration from an engineer or other expert, which might have placed in dispute whether an above-ground fence interferes with Columbia's right under the ROWs. There is no doubt that he did not designate any expert witnesses in this case nor has he filed any expert reports and the deadline to have done so expired on January 8, 2015 pursuant to this Court's Scheduling Order. *See* ECF 18.[4] Thus, the evidence remains undisputed and this Court, in light of the Kvasnicka Declaration and Virginia law, finds that Vlahos continues to violate the 1950 and 1951 ROWs by maintaining on the easement and his property the fence that impairs Columbia's right and ability to operate and attend to its pipelines. In challenging the Kvasnicka Declaration, Vlahos attaches to his brief a number of unsworn, unauthenticated documents, including ground-level photographs of various properties. Regarding this documentary evidence, such "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence." *Miskin v. Baxter Healthcare Corp.,* 107 F. Supp. 2d 669, 671 (D. Md. 1999) (citing *Orsi,* 999 F.2d. at 92). Therefore, these documents may not defeat Columbia's properly supported Motion.

Even if the Court may appropriately consider this evidence, it still fails to raise a genuine issue of material fact. The fact that Vlahos' "neighbors currently maintain on their property a . . . fence does not directly contradict . . . [Kvasnicka's] opinion that the . . . [fence Vlahos] maintains on his property interefere[s] with Columbia's rights under the ROWs." *Columbia Gas*, 984 F.

---

[4] Vlahos' opposition is filled with his purported expert opinions regarding whether the fence interferes with Columbia granted rights to operate and maintain the pipeline in the easement. However, the operation and maintenance of a high-pressure natural gas pipeline is beyond the scope of permissible lay testimony and expert testimony is required. *See Certain Underwriters at Lloyd's London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000); *Adamson v. Columbia Gas Transmission LLC*, 987 F. Supp. 2d at 706, affd 579 Fed. Appx. 175 (4th Cir. July 28, 2014) ("The installation, maintenance and operation of a natural gas pipeline is clearly beyond the ken of a lay witness.").

Supp. 2d at 522.  Additionally, as Columbia points out, Vlahos neglects to challenge Kvasnicka's

qualification to render an opinion as to the safe maintenance and operation of Columbia's pipeline.

*See* ECF No. 25 at 12

### IV.    Conclusion

For the aforementioned reasons, the Court hereby GRANTS Columbia's Motion for

Summary Judgment.   ECF No. 22.  Having found Vlahos in breach of the 1950 and 1951 right-of-

way agreements, the Court DIRECTS Vlahos to remove the fence that is located on the property

within thirty days of entry of the Final Order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___4th___ day of March 2015.